NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**AMY E. POTTER**
Assistant United States Attorney
amy.potter@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 6:22-mj-00214-MK |
| v. | **UNITED STATES' MOTION FOR DETENTION** |
| **JACOB JOEL DEETER,** | |
| Defendant. | |

Defendant Jacob Deeter secretly videotaped and masturbated in front a 16-year-old minor (MV1) who he had known for over a decade. Despite knowing her age, he installed video cameras to capture her showering, then he viewed those videos and captured screenshots that focused on her genitals. All told, he had hundreds of images and videos of MV1. Even when MV1's mother (AW1) discovered a sexually explicit image of MV1 on his computer, he did not get rid of those images. Eugene Police discovered them during a search of his electronic devices. Deeter, who is facing a 15-year mandatory minimum for production of child pornography, is a danger to the community and a flight risk; he should remain detained pending trial.

**United States' Motion for Detention**  Page 1

**Factual Background**

Deeter knew MV1 for years and she stayed at his home, where AW1 also lived, frequently. *See* Govt. Ex. 1, Report of EPD Police Reports of Investigation (filed under seal) at 5. On October 14, 2022, because AW1 suspected Deeter may have been cheating on her, she decided to look at Deeter's laptop when he was sleeping to confirm her suspicions. *Id.* She found a file with a dozen thumbnail photos of a young woman; when she opened the file, she discovered it was MV1. *Id.* at 5-6. She realized the file name was MV1's initials. *Id.* And that the image was of MV1 naked in the shower at Deeter's home. *Id.* at 6. Because of the angle of the image, AW1 believed the camera was hidden in the overflow pipe of the tub. *Id.* AW1 confronted Deeter; he claimed it was an accident and AW1 left. EPD got involved shortly thereafter.

Based on the information provided by AW1, Detective Jed McGuire obtained a state search warrant for Deeter's home a few days later. *See* Govt. Ex. 2, State Search Warrant (filed under seal). During the search warrant, detectives found a black cable and a green extension cord wrapped around pipes in the bathroom. Ex. 1 at 12-13, 17. This appeared consistent with a secretly placed camera setup without the camera. *Id.* at 25. They also recovered a backpack which contained numerous electronic devices including cell phones, laptops, and pieces of video surveillance systems. *Id.* at 14-15.

During the execution of the search warrant, Deeter was detained and searched. He had, among other things, two cellphones and a small bag of methamphetamine on him. Det. McGuire read Deeter the search warrant; Deeter immediately responded that he did not have any of "that stuff" anymore. *Id.* at 20. Deeter said he had destroyed the laptop. *Id.* He also said the video

recording had been an accident; he had set up the camera on the bathroom counter to capture him and AW1 and the camera just continued running. *Id.* at 20.

Det. McGuire subsequently obtained a search warrant to search the seized electronic devices for images of MV1. See Govt. Ex. 3, State Search Warrant (filed under seal). He located numerous videos of MV1 in the shower; based on the file names and time stamps, they appear to have been taken over several months in 2021 and 2022. Ex. 1 at 21-23. In one of the videos, "20220219_011309.mp4," Deeter is seen placing a camera inside the access wall of the bathroom moments before MV1 enters the bathroom to take a shower. *Id.* at 21-22. Det. McGuire also found numerous images of MV1 in the shower, including screenshots from a phone. *Id.* at 23. The screenshots, which appear to have been taken from the videos, emphasized MV1's vagina, buttocks, and breasts.[1] *Id.* In total, there were hundreds of images and videos of MV1. *Id.*

Detective McGuire arranged to have MV1 interviewed at Kids First in Eugene. *Id.* at 28 Prior to the interview, AW1 told Detective McGuire about a note that MV1 had brought her in 2021. *Id.* According to AW1, MV1 found the note on her pillow and showed it to her. *Id.* AW1 recognized the writing as Deeter's, and the note discussed how he wanted to "lick her pussy" and make her "cum tonight." AW1 sent a picture of the note to Deeter, and he claimed the note was intended for another woman, not for MV1. AW1 and Deeter argued over the note; Deeter took

---

[1] The government is working to obtain copies of some of the images and videos so that they are available should the Court want to review them. Because of the nature of the images, they cannot be attached as exhibits even if sealed.

**United States' Motion for Detention**   **Page 3**

the note from AW1 and she does not know where it went. *Id.* The photo was deleted from AW1's phone; she believes Deeter did that.[2]

During the Kids First interview, MV1 discussed the note. She said that she and AW1 initially thought the note was not for her, but after she learned about the videotaping, she is not sure. *Id.* at 29. She described the note in great detail and explained it described her shorts as sexy and contained a response area for her to write "yes" or "no" regarding whether she wanted to continue the sexual advances. *Id.* MV1 said it described what he wanted to do to her, including licking her pussy, which she found "really gross." *Id.*

MV1 also described multiple incidents where Deeter would masturbate in her presence. *Id*. at 29-30. She first noticed this in 2020 when she would sometimes see Deeter touching himself out of the corner of her eye; she would try to ignore it. *Id.* at 30. There ended up being multiple such incidents in Deeter's home. *Id.* at 30. Deeter would stare at her or into the distance and his hand or arm would move frequently. *Id.* Sometimes it appeared to be an effort to "get off" and other times it appeared to be "[m]indless fondling." *Id.* MV1 said she could sometimes see the shaft area of Deeter's penis when this occurred.

During one car ride to Eugene, MV1 saw Deeter masturbating in the reflection of the window. *Id.* at 30. MV1's response was to pull up her hoodie and cover her face. *Id.* When asked for specifics, MV1 described Deeter as in his "work jeans" which were unzipped, and his penis was exposed. *Id.* He had one hand on the steering wheel and one hand stroking his penis. *Id.* It occurred about halfway through the drive, and he stopped touching himself and zipped up his pants when they were within a few blocks from home. *Id.*

---

[2] Because the state search warrants are limited to searching for images of MV1, Detective McGuire is not able to re-access Deeter's devices to see if any of them contain an image of the note. Govt. Ex. 3 at 7.

**United States' Motion for Detention** Page 4

Deeter was initially charged in state court. On December 5, 2022, a criminal complaint was issued for Deeter charging him with production of child pornography and possession of child pornography in violation of 18 U.S.C. § 2251(a) and (e) and 18 U.S.C. § 2252A(a)(5). He was transferred to federal custody the next day.

**Argument**

Under the governing bail statute, 18 U.S.C. § 3142, the government bears the burden of proving by a preponderance of the evidence that a defendant is a flight risk; community danger requires clear and convincing proof. *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). Four factors help guide release decisions: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the nature and seriousness of the danger posed to the community; and (4) defendant's history and characteristics. 18 U.S.C. § 3142(g).

Deeter is charged with committing an offense involving a minor victim in violation of 18 U.S.C. § 2251. Therefore, the crime charged gives rise to a statutory rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(E). Although the burden of persuasion remains on the government, the presumption shifts the burden of production to the defendant to address the danger posed by his release. *United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). Even if a defendant comes forward with evidence to rebut it, however, the presumption remains in the case as an evidentiary finding militating against release. *Id*.

In terms of presenting evidence at a detention hearing, the government and the defense may proceed by proffer and the rules of evidence do not apply. 18 U.S.C. § 3142(f). The government is not limited to the charged conduct or the contents of a complaint when presenting

evidence to support detention.  *Cf. United States v. Trujillo*, No. 1:21-cr-01235-WJ, 2022 WL 3542556, 2022 U.S. Dist. 147943, *7 (D. New Mexico Aug. 18, 2022) (noting that defendant "cites no authority that prevents the Court from considering uncharged conduct in determining whether he is a danger to the community or a flight risk").  This Court can and should consider "the evidence surrounding the investigation" and other evidence, even of uncharged conduct, to analyze the defendant's history and characteristics and dangerousness.  *Id.*

This Court "may consider evidence of the defendant's past or present wrongful conduct as indicative of a defendant's dangerous tendencies, regardless of whether such conduct resulted in a state or federal prosecution." *United States v. Tolbert*, No. 3:09-CR-56-TAV-HBG, 2017 WL 6003075, at *5, 2017 U.S. Dist. LEXIS 198744, at *13 (E.D. Tenn. Dec. 4, 2017); *cf. United States v. Barone,* 387 F. App'x 88, 90 (2d Cir. 2010) (affirming detention of defendant based, in part, on uncharged crimes).  The reason for this is clear—the question of whether a defendant is a danger turns on a "practical assessment of the defendant's dangerousness" not an analysis of the guilt or innocence of the charged offense.  *Tolbert*, 2017 U.S. Dist. LEXIS 198744, at *14.  And that assessment should include all evidence that speaks to that issue, so long as the Court gives it the appropriate weight.  *See United States v. Brown*, No. 22-cr-383, 2022 WL 10080824, 2022 U.S. Dist. LEXIS 188608, *9 (N.D. Ill Oct. 17, 2022 ("The Court is obligated under §3142(g) to consider the danger this defendant will pose to the community if released, and evidence of uncharged conduct may be considered at a detention hearing, as long as it is properly evaluated and weighed." (citations omitted)).

Considering the statutory factors included within § 3142(g) and the evidence, Deeter is a danger to the community.  Deeter set up a hidden camera to secretly videotape MV1 taking showers in his bathroom.  He wanted to catch her naked and he placed the camera in a location

specifically designed to capture her vagina and buttocks. Then he took those videos, found portions which focused on MV1's vagina, buttocks, and breasts, and took screen shots of those portions. He then saved them for future viewing, some in a folder labeled with MV1's initials. And this did not happen just once or twice—he had hundreds of images and videos of MV1. His intent for making the videos and then creating images that focused on MV1's genitals is clear—he did so for sexual gratification.

For his victimization of MV1, Deeter is facing a 15-year mandatory minimum for one of the charges (18 U.S.C. § 2251) and up to 20 years imprisonment for the other (18 U.S.C. § 2252A). The severity of the punishment underscores the seriousness of the crimes. *See New York v. Ferber*, 458 U.S. 747, 759 (1982) (describing the production of child pornography as child "abuse," "molestation," and "exploitation").

But this is more than just a case about using a hidden camera to capture a minor. Deeter victimized a minor he purported to care about. Deeter's focus on MV1's naked body combined with masturbating in her presence makes clear she was an object of his sexual desire. Even when confronted by AW1, he did not part with the hundreds of videos and images. There is reason to be concerned about not only MV1's safety, but also other children that Deeter has had access too. His claims that he has no idea where MV1 currently resides is belied by the fact that he has been a part of the family's life for over a decade and is very familiar with their living situation and options. While a GPS monitor will provide knowledge of his whereabouts, a monitor can be removed. It is far from foolproof.

Conditions also do not prevent Deeter from purchasing new electronic devices and accessing the internet or attempting to obtain other images of minors. He is also believed to have a past history of substance abuse and had methamphetamine on him when he was arrested. This

adds to the potential risk. *See* 18 U.S.C. 3142(g)(3)(A) (a defendant's history and characteristics include prior drug or alcohol abuse).

Moreover, Deeter is now facing over a mandatory 15 years in prison in this case. He is also a risk of nonappearance. *Santos-Flores*, 794 F.3d at 1092 (recognizing that the severity of the anticipated punishment favors detention).

Deeter preyed on a minor who for over a decade was basically a member of his family. He did not just videotape her; he converted those videos into images to capture sexually explicit poses. He is a danger and a flight risk. He should be detained.

MV1 and her guardians support detention in this case.

## Conclusion

Deeter should be detained as a danger and a flight risk.

Dated: December 9, 2022

                                      Respectfully submitted,

                                      NATALIE K. WIGHT
                                      United States Attorney

                                      s/ *Amy E. Potter*
                                      AMY E. POTTER
                                      Assistant United States Attorney